**UNITED TRANSPORTATION UNION, Plaintiff,**

v.

**CHICAGO & ILLINOIS MIDLAND RAILWAY COMPANY, Defendant.**

No. 89–3014.

United States District Court, C.D. Illinois, Springfield Division.

March 6, 1990.

Clinton J. Miller, III, United Transportation Union, Cleveland, Ohio, William K. Cavanagh, Springfield, Ill., for plaintiff.

Charles E. Holt, Graham & Graham, Springfield, Ill., for defendant.

OPINION

RICHARD MILLS, District Judge:

At issue is whether the Defendant railroad is required to engage in nationwide,

multi-employer collective bargaining or whether the railroad can bargain on its own behalf at the local level. We find that the Chicago & Illinois Midland Railway Company is not required to engage in nationwide handling of the wage and rules proposals that are in dispute.

This cause is before the Court on Defendant's motion to dismiss or in the alternative for summary judgment. Also before the Court is Plaintiff's motion for summary judgment. (As both sides have submitted affidavits and other documents in support of their respective motions, the Court will treat Defendant's motion as a motion for summary judgment.) In addition, Defendant has filed a counterclaim seeking declaratory and injunctive relief.

Thus, Defendant's motion for summary judgment on Plaintiff's complaint will be allowed and Plaintiff's motion for summary judgment will be denied. Furthermore, summary judgment will be entered in favor of Defendant on its counterclaim.

## I—Facts

Defendant Chicago & Illinois Midland Railway Company (C & IM) is a Class 2 railroad incorporated in Illinois. C & IM owns approximately 97 miles of mainline track and a lesser amount of side track in the five Illinois counties of Christian, Sangamon, Menard, Mason, and Tazewell. The railroad has 177 active employees, 18 of which are represented by the United Transportation Union (UTU). C & IM provides common carrier service by railroad but is primarily engaged in hauling coal.

Plaintiff UTU is an unincorporated association operating as a labor union. UTU represents railroad industry employees throughout the United States and Canada. The crafts represented by UTU are firemen, conductors, brakemen, yardmen, yardmasters, and some engineers. UTU is comprised of three organizational levels: (1) the international; (2) over 300 general committees of adjustment; and (3) approximately 800 locals.

On May 18, 1988, C & IM served bargaining notices pursuant to § 6 of the Railway Labor Act, 45 U.S.C. § 156. Under § 6 of the RLA, a party to a railroad collective bargaining agreement who desires a change in the terms of the agreement must serve written notice of the desired change on the other party to the agreement. UTU served § 6 notices on July 25, 1988.

Thereafter, the parties met several times to discuss wage and rules issues. In a meeting on October 13, 1988, UTU Vice President Cliff Bryant stated that the § 6 notices belonged in national handling. No further meetings were held.

Plaintiff filed its complaint on January 18, 1989. The complaint alleges that part of the obligation of the parties under § 2 First of the RLA, 45 U.S.C. § 152 First, is to handle § 6 notices nationally where the historical methodology of handling and practical appropriateness of mass bargaining indicate national handling is appropriate and one of the parties insists on national handling. Thus, Plaintiff requests that the Court grant it declaratory and permanent injunctive relief ordering Defendant to negotiate UTU's July 25, 1988, § 6 notice on a national basis. To accomplish this, Plaintiff requests that the Court issue an injunction directing Defendant to give its power of attorney to negotiate to the National Railway Labor Conference.

Defendant filed a counterclaim on March 3, 1989. The counterclaim alleges that Defendant is not required to engage in national handling and further alleges that Plaintiff's attempt to force Defendant to negotiate nationally is a violation of the Railway Labor Act. Defendant seeks a judgment declaring that C & IM has the unilateral right to select its representative for purposes of negotiating § 6 notices; that C & IM is not required to bargain over its choice of representative for contract negotiations; that UTU's attempts to force C & IM to negotiate on a national basis violate the Railway Labor Act; and declaring that the refusal of UTU to negotiate directly with C & IM on a local basis violates the Railway Labor Act. C & IM also seeks an injunction requiring UTU to participate in good faith negotiations with C & IM over the terms and conditions of the 1988 § 6 notices.

## II—Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

## III—Analysis

Disposition of these cross motions for summary judgment hinges on which of two competing interpretations of a statute the Court accepts. C & IM's relations with its employees are governed by, *inter alia*, the Railway Labor Act, 45 U.S.C. § 151, *et seq.* Under the RLA, a carrier and its employees have the duty to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes. . . ." 45 U.S.C. § 152 First. Either party can begin negotiations to change wage, rules, or working condition agreements by serving a notice pursuant to § 6 of the RLA, 45 U.S.C. § 156, on the other party. The carrier and its employees are then required to confer in an attempt to resolve any dispute arising out of the § 6 notices. Furthermore, both the carrier and its employees have the right to select their own representative to resolve disputes, without interference, influence or coercion by the other party. 45 U.S.C. §§ 152 Second, 151 Sixth, 152 Third.

### A. *Plaintiff's Position*

Plaintiff asserts that the Railway Labor Act and relevant case law require national handling of certain railway labor disputes. To support this contention Plaintiff relies almost entirely on a line of cases decided by the United States Court of Appeals for the District of Columbia Circuit and the United States District Court for the District of Columbia.

The earliest of the cases on which Plaintiff relies is *Brotherhood of Railroad Trainmen v. Atlantic Coastline R.R.*, 383 F.2d 225 (D.C.Cir.1967), *cert. denied*, 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968). In that case, the parties were involved in a dispute over the makeup of yard and road crews. The plaintiff served identical § 6 notices on approximately 80 carriers. Those carriers, one of which was the defendant, served their own § 6 notices on the plaintiff.

The union and various carriers began to negotiate on a local basis. Although the carriers requested that the dispute be referred to national handling if the local negotiations broke down, the union refused from the outset.

Local negotiations did break down and the parties invoked the services of the National Mediation Board. The carriers requested that mass mediation be scheduled but instead the board docketed each dispute separately.

Subsequently, several carriers, including the Atlantic Coastline R.R., filed suit in the District Court for the District of Columbia seeking declaratory and injunctive relief. The defendants asserted, *inter alia*, that the union breached a statutory obligation by refusing the request for national handling. The district court ultimately held that the RLA authorized the carriers to demand national handling.

The United States Court of Appeals for the District of Columbia Circuit reversed the district court but did so on the basis that the facts of the particular case did not warrant a finding that the carrier could insist on national handling. The Court went on to state, however:

> The Railway Labor Act does not universally and categorically compel a party to a dispute to accept national handling over its protest. Such bargaining is certainly lawful, however. Whether it is also obligatory will depend on an issue-by-issue evaluation of the practical appropriateness of mass bargaining on that point and of the historical experience in handling any similar national movements.

*Id.* at 229. The last quoted sentence is the language on which Plaintiff's entire case is based.

*Atlantic Coastline* has been cited in several other cases from the D.C. Court of Appeals and the District Court for the District of Columbia. *Delaware & Hudson Ry. Co. v. UTU*, 450 F.2d 603 (D.C.Cir. 1971), involved an attempt by 170 carriers to enjoin the union from conducting a selective strike against fewer than all of the carriers. Although the court found that the union did have the right to conduct selective strikes, the court cited *Atlantic Coastline* for the proposition that national handling may be obligatory.

In *Chicago, Burlington & Quincy R.R. v. Railway Employee's Department*, 301 F.Supp. 603, 607 (D.C.D.C.1969), the District Court for the District of Columbia also followed *Atlantic Coastline* and held that national handling was required.

*Chicago, Burlington & Quincy* involved a dispute over "contracting out" or the subcontracting of work. The court found that the subject matter of the dispute was one which had been handled, historically, on a multi-employer basis and the issue was not unique to the union's dealing with any specific carrier. *Id.* Thus, the court held that both the practical appropriateness of mass bargaining and the historical experience in handling the issue in the past

made national handling of the matter obligatory. *Id.*

In *UTU v. Burlington Northern, Inc.*, 325 F.Supp. 1125, 1131 (D.C.D.C.1971), the District Court for the District of Columbia again relied on *Atlantic Coastline* in finding that a dispute was subject to obligatory national handling. That case involved a disagreement over whether freight and yard diesel locomotives would be manned with firemen. The court, on the strength of *Atlantic Coastline*, found that negotiations and past agreements concerning the firemen manning dispute indicated a clear acceptance by the parties of national handling. The court further found that the issue was uniquely appropriate for general national standards. Thus, the court held that the historical experience and practical appropriateness of mass bargaining mandated a finding that national handling was obligatory.

The final case on which Plaintiff relies is *General Committee of Adjustment v. Grand Trunk Western R.R. Co.*, 1986 WL 20955 (E.D.Mich. June 12, 1986). Again the court relied on *Atlantic Coastline* and found that the dispute was subject to national handling.

### B. *Defendant's Position*

Defendant asserts that it is not required to participate in national handling for three reasons. First, Defendant asserts that the language of the Railway Labor Act itself mandates a finding that national handling is not obligatory. Second, Defendant argues that the analogous National Labor Relations Act has never been interpreted as restricting the right of employers or their employees to decline to participate in multi-employer bargaining. Third, Defendant contends that the cases on which Plaintiff relies are distinguishable because they all involve a situation where one party commences national negotiations and then attempts to withdraw.

Defendant's argument based on the language of the RLA is rather simple. Under the RLA, both employees and carriers are guaranteed the right to select their own representatives to resolve disputes over proposed changes in existing agreements

through collective bargaining. 45 U.S.C. §§ 151 Sixth, 152 Second. The Act expressly prohibits either party from attempting to coerce the other in its choice of a bargaining representative. 45 U.S.C. § 152 Third. Nowhere does the Act require that a party must engage in national handling of any dispute. Thus, Defendant asserts, national handling of a dispute is completely voluntary by the parties.

Defendant's second argument is based on case law interpreting the National Labor Relations Act. Defendant asserts that national handling under the RLA is similar to multi-employer bargaining under the NLRA. Defendant further asserts that it is well established under the NLRA that "[m]utual consent ... is a basic ingredient necessary to support the appropriateness of a multi-employer bargaining unit." *Andes Fruit Co.*, 124 N.L.R.B. 781, 783 (1959). Thus, by analogy, Defendant argues that mutual consent is necessary to support national handling under the Railway Labor Act.

As its third attack on Plaintiff's position, Defendant attempts to distinguish the line of cases on which Plaintiff relies. Defendant asserts that the cases cited by Plaintiff are all cases in which a party commenced national handling and then attempted to withdraw and engage in local negotiations or took other action inconsistent with national handling. Defendant asserts that it informed Plaintiff from the outset that it intended to bargain on its own behalf on a local basis and that Plaintiff virtually ignores the only reported case addressing such a situation, *American Railway and Airway Supervisors Association v. Soo Line R.R. Co.*, 690 F.Supp. 802 (D. Minn.1988).

In *Soo Line*, the railroad notified the unions of its intention to bargain locally on its own behalf before national negotiations began. The district court noted that the line of cases on which the plaintiff relied— the same line of cases on which UTU relies—were all cases in which one of the parties commenced national bargaining and then later attempted to withdraw. *Soo Line*, 690 F.Supp. at 807. The district

court noted that the statutory silence on the issue of national handling, the lack of precedent imposing national handling where one party declines from the outset, and the treatment of national handling under the NLRA all indicated that national handling should not be imposed. *Id.*

During the pendency of the case in this Court, the United States Court of Appeals for the Eighth Circuit decided the *Soo Line* appeal. *American Railway and Airway Supervisors Association v. Soo Line R.R. Co.*, 891 F.2d 675 (8th Cir.1989). The Eighth Circuit repeated the district court's observation that no reported decision construes the duty to exert every effort to make and maintain agreements as obligating a railroad to bargain for a national contract through a national bargaining representative, at least where national handling has not yet begun. The court further observed that the union's argument to the contrary ignores the statutory right of each party to designate a representative with whom the other party's representative must negotiate.

## IV–Ruling

◼ We find that Defendant C & IM is not required to engage in national handling of the wage and rules proposals in dispute. To hold otherwise would be to add a provision to the RLA that Congress did not see fit to include. That is not the function of this federal trial court.

Plaintiff relies in large part on *Atlantic Coastline* and its progeny, a line of cases decided by the United States Court of Appeals for the District of Columbia Circuit and the United States District Court for the District of Columbia. Those cases state that national handling is obligatory if the practical appropriateness of mass bargaining and the historical experience in handling similar national movements so indicate.

The Court is at once struck by the lack of citation to authority that accompanies these statements in the cases on which Plaintiff relies. The question arises where those courts find the two factors that Plaintiff alleges mandate a finding that national handling is required. Certainly,

nothing in the statute requires the Court to look at those two factors. The RLA does not even mention national handling. The only conclusion that can be reached—or at least the conclusion that this Court reaches—is that the courts that decided the cases on which Plaintiff relies made the factors of practical appropriateness and historical experience out of whole cloth. That is something that this Court is unwilling to do. We must respectfully disagree with *Atlantic Coastline* and its progeny.

Our holding is not without support in the case law. The Court has already discussed the holding of *American Railway and Airway Supervisors Association v. Soo Line R.R. Co.*, 891 F.2d 675 (8th Cir.1989). That case held that a railroad has a statutory right to designate its own representative, that the railroad had no obligation to accept national bargaining, and that the railroad was not bound by national negotiations in which it chose not to participate.

Similarly, in *UTU v. Grand Trunk Western R.R. Co.*, 712 F.Supp. 107 (E.D.Mich. 1989), the court considered a situation in which the plaintiff union sought to compel a railroad to continue to participate in national bargaining as the railroad had in past years. The court held that national handling was not required, at least where the railroad notified the union of its intention to bargain locally before national handling commenced. *Id.* at 111.

Our holding in this case is also backed up by relevant case law interpreting the National Labor Relations Act. We recognize, of course, that cases decided under the NLRA are not binding precedent for cases decided under the Railway Labor Act. Nor can the NLRA be imported wholesale into the railway labor arena. *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969). National handling as that term is used with reference to the RLA, however, is similar to multi-employer bargaining under the NLRA. Thus, cases interpreting the NLRA offer helpful instruction.

The NLRA is not interpreted as restricting the rights of employers or their employees to decline to participate in multi-employer bargaining, even where such bargaining has been conducted in the past. *Charles D. Bonanno Linen Service, Inc. v. NLRB*, 454 U.S. 404, 410–12, 102 S.Ct. 720, 724–25, 70 L.Ed.2d 656 (1981). Under the NLRA, "[m]utual consent ... is a basic ingredient necessary to support the appropriateness of a multi-employer bargaining unit." *Andes Fruit Co.*, 124 NLRB, 781, 783 (1959). Thus, under the NLRA, a party may withdraw from a multi-employer bargaining unit at any time up to the start of negotiations. *Publishers' Association of New York City v. NLRB*, 364 F.2d 293 (2d Cir.1966). Even after bargaining has begun, a party may withdraw if there is mutual consent or unusual circumstances. *Charles D. Bonanno Linen Service, Inc. v. NLRB*, 454 U.S. at 411, 102 S.Ct. at 724. We find that these cases support our holding that national handling under the RLA is not mandatory at least where, as here, one party refuses to participate from the outset.

### V–Defendant's Counterclaim

In addition to defending against Defendant's motion for summary judgment on its complaint, Defendant has filed a counterclaim. Defendant's counterclaim asserts that it has the unilateral right to select its representative for the purpose of negotiating the 1988 § 6 notices, that it is not required to bargain over its choice of representative, and that the efforts of Plaintiff to force Defendant to give its power of attorney to negotiate to the NRLC violates the terms of the Railway Labor Act. Defendant further asserts that Plaintiff's refusal to bargain with it at the local level violates the terms of the RLA and that Plaintiff should be required to participate in good faith negotiations with C & IM over the terms and conditions of the 1988 § 6 notices. We agree with each of Defendant's assertions and summary judgment will be granted in Defendant's favor on its counterclaim.

### A. *Selection of Representative*

Defendant asserts that it has the unilateral right to select its bargaining representative, that it is not required to bargain

over its choice of representative, and that Plaintiff's attempts to force Defendant to give its power of attorney to negotiate to the NRLC are a violation of the Railway Labor Act. Based on the clear wording of the statute we find Defendant to be correct.

■ Pursuant to § 2 Third of the RLA, 45 U.S.C. § 152 Third, "[r]epresentatives ... shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives." This language unequivocally establishes that Defendant has the right to select its own representative and it is not required to bargain over its choice of a representative. To require Defendant to bargain over its choice of representative would be to run afoul of the statute's mandate that a party be able to choose its own representative without interference or influence from the other party.

■ Similarly, in order for this Court to grant Plaintiff the relief requested and order Defendant to give its power of attorney to negotiate to the National Railway Labor Conference, we would have to pretend as though 45 U.S.C. § 152 Third did not exist. Ordering Defendant to give its power of attorney to the NLRC would be tantamount to aiding Plaintiff in a violation of the Railway Labor Act. This we are unwilling to do.

Plaintiff asserts that it does not intend to interfere with Defendant's choice of representative and Defendant is free to choose any representative it desires. Plaintiff further asserts, however, that Defendant is required to engage in national handling and the only method of engaging in national handling of which Plaintiff is aware is for Defendant to give its power of attorney to negotiate to the NRLC. Thus, Plaintiff asks that the Court order Defendant to give its power of attorney to the NRLC.

Plaintiff's argument reminds us of Henry Ford's statement to the effect that a purchaser of a Model T could have any

color he chose—so long as it was black. It hardly needs to be said that a choice of one is no choice at all.

### B. *Bargaining at Local Level*

■ Defendant also asserts that Plaintiff's refusal to bargain with it at the local level violates the terms of the RLA and that Plaintiff should be ordered to participate in good faith negotiations with Defendant over the terms and conditions of the 1988 § 6 notices.

It should first be noted that this Court has the power to issue an injunction in this case. The Norris–LaGuardia Act, 29 U.S.C. §§ 101–115, expresses a basic policy against the injunction of activities of labor unions. The United States Supreme Court has held, however, that the Norris–LaGuardia Act does not deprive federal courts of jurisdiction to enjoin compliance with certain mandates of the RLA. *International Association of Machinists v. Street*, 367 U.S. 740, 772, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1961); *Virginian Rail Co. v. System Federation*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

"The heart of the Railway Labor Act is the duty, imposed by § 2 First upon management and labor, 'to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes ... in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.' " *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377–78, 89 S.Ct. 1109, 1114–15, 22 L.Ed.2d 344 (1969). Section 2 First of the RLA is more than merely a statement of policy or exhortation to the parties. *Chicago & Northwestern Ry. Co. v. United Transportation Union*, 402 U.S. 570, 577, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187 (1970). Congress was not pleading with labor and management to attempt to solve their differences. The words of § 2 First create a legal obligation. *Id.* That legal obligation is enforceable by means of an injunction. *Id.*

■ The only remaining question is whether Plaintiff's refusal to bargain with

Defendant at the local level is a violation of the duty to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions. This question needs little discussion. Clearly, refusing to negotiate is not exerting every reasonable effort to make or maintain an agreement. Plaintiff's refusal to negotiate violates the duty imposed by 45 U.S.C. § 152 First.

### VI–Conclusion

The Court holds that Defendant is not required to engage in national handling under the Railway Labor Act. To hold otherwise would be to ignore the plain meaning of the statute. We further hold that Defendant has the right to select its bargaining representative without interference or influence from Plaintiff. Finally, we hold that Plaintiff's refusal to negotiate with Defendant is a violation of the duty to exert every reasonable effort to make and maintain agreements. Plaintiff is ordered to begin good faith negotiations with Defendant over the terms and conditions of the 1988 § 6 notices.

*Ergo,* for the reasons discussed herein, Plaintiff's motion for summary judgment (d/e 7) is DENIED. It is further ordered that Defendant's motion for summary judgment (d/e 4) is ALLOWED. It is further ordered that summary judgment is entered in favor of Defendant on its counterclaim.